Case number 23-1761, Joe Bruneau et al. v. Michigan Dept of Environment, Great Lakes, and Energy et al. Oral argument, 15 minutes per side. Mr. Pivko for the appellants. Good morning. Good morning, your honors. Daniel Pivko for plaintiff's appellants. May it please the court. Yeah. This case stems from the collapse of the Edenville Dam, which caused catastrophic damage to residential and personal properties of plaintiffs and other putative class members. The lower court dismissed plaintiff's complaint, adopting the magistrate judge's report and recommendation, which recommended that the claims under the federal and Michigan Constitution should be dismissed because defendants did not take plaintiff's property for a public purpose. However, in this decision, the lower court did not have the benefit of Krieger, where the Michigan Court of Appeals squarely addressed these issues, as well as further issues addressed in defendant's brief. I don't understand how you can rely on Krieger when, as I understand it, it just dealt with a motion to dismiss, and it said if the court assumes, as it's required to do, the allegations are true, therefore it can proceed further. What precedential value or even persuasive value does that have? So in Krieger, they conducted in-depth analysis on whether or not the Edenville Dam could create a cause of action for an inverse condemnation claim. After conducting that legal analysis, they then applied it to the facts, assuming that they were true. Here, what plaintiffs are asking is that we could take the legal analysis from Krieger, apply them to the facts here, which have been proven, and we simply don't use that standard of assume that the facts are true. What's the status of that case? What is that? What's the status of that case now? The status? I don't believe that there was an appeal in that case. No, I'm making the point, if you decide that we're not going to get rid of it at the motion to dismiss stage, it goes back for discovery. I'm just trying to figure out if you know what's going on at the trial level in Krieger. In Krieger, I do not. Okay. Regarding the public use requirement, the lower court based its decision. Are you trying to talk about the federal claim first or the state claim first? The state claim, sorry. You want to start with the state claim? Yes. Okay. Does Michigan law go further than federal law in takings? In a sense, I think that it may be more broad under inverse condemnation clause. The may is the key interesting word in that sentence. I was hoping you could tell us one or the other.  In Krieger, they talked about how under an inverse condemnation clause, to establish public use, you want to look at the intent of the action, the affirmative action that's directed toward the plaintiffs, not whether or not the government intended to use the property for a public use. This was the analysis that was done in the lower court. In this case, the counties asserted that Boyce Hydro and the state agencies essentially were the ones who exerted control over the dam. Meanwhile, the counties were just bystanders that really weren't involved leading up to the dam's failure. However, the evidence shows that the counties exerted significant control over the dam. What happens if we decide the counties were negligent but nothing more? They didn't intend for this to happen. Let's, for the sake of argument, say they weren't reckless. It's just negligence. Think of a tort. How could that be a taking? That's a head-scratcher to me. Under Michigan law, no. If it was negligence, it would not be considered a taking. So what evidence do you have of intent here on behalf of the government? What we're showing is that there was intent to control the dam for a public purpose. And what happened is that once Boyce Hydro had his license revoked, the counties established their delegated authority, the Four Lakes Task Force, to negotiate purchase of the dam, control, repair, and do maintenance to the dam. They filed a petition with the Midland County Circuit Court to set the lake levels for the Four Lakes. They have the power to do this under the National Resources and Environmental Protection Act, the NREPA. Part 307 of that act gave the counties authority to petition the circuit court. So unlike what defendants are asserting, they did have authority under the statute to exert control over the dam by filing this petition and setting the lake level orders. Furthermore, once the petition was entered under Part 307 of the NREPA, the delegated authority of the Four Lakes Task Force was required under state law to maintain and enforce those lake levels. The exact language of that statute is that the delegated authority of any county or counties in which the inland lake is located shall provide for and maintain that normal level. Therefore, it's clear that when the counties filed the petition and the order was entered, Michigan law granted them the statutory authority and the statutory duty to maintain those lake levels. Additionally, the task force entered into a purchase agreement with Boyce Hydro. The agreement required Boyce Hydro to maintain those lake level orders as well as other requirements under Part 307. And the Four Lakes Task Force was actually providing payments to Boyce Hydro under the condition that he maintain those lake level orders. So the combination of evidence that they controlled the dam is that they established this delegated authority. They filed the petition in the circuit court to set the lake levels, which the owner would be bound by. They entered into an agreement. And those lake levels were consistent with decades of lake levels? That is correct. Same amount? Yes. And the causation in terms of the actions of the county is what? If they're doing the same thing everyone else is doing? Right. The problem is that the FERC revoked Boyce Hydro's license because of the deficient spillway capacity. At the time, FERC estimated that the dam could barely pass half of the probable maximum flood, which is the Michigan requirement. The federal government requires it to pass the full probable maximum flood. Further issues were created once that license was revoked because Boyce Hydro could no longer use the dam. All of this sounds like negligence. What's the intent? The intent here is to achieve a public purpose. What was the government doing? As I understand the district court's reasoning, you're saying that there was no evidence from which a reasonable fact finder could infer that the counties flooded their properties to achieve some public benefit. Right. Now, do you dispute that? Do you have some evidence to show an intent to achieve some public benefit? Or are you disputing the legal standard that the district court applied? Our position is actually both. We're disputing the legal standard and we're also disputing that the plaintiffs didn't provide evidence. First, to address the standard, Krieger analogized to Hathcock saying that it's not whether the properties were used for a public purpose. Hathcock established that one of the ways to establish public use is to show that the actions were intended for a public purpose. Now, the counties adopted resolutions when they formed the Four Lakes Task Force saying that the whole purpose of setting the lake level order was to protect the value of the lakes, to protect the environment. And it's clear they're establishing a list of public purposes for setting that lake level order. And when they petitioned the circuit court, they re-established that resolution stating this is why we're setting the lake level order. We want to protect the value of the properties that are on the lake. We want to protect the environmental concerns of the lake. So it's clear when they were setting the lake level order there was an express public purpose. And in regards to the legal standard, Krieger said that we look to the action. We look to them setting that lake level order. Did they have a public purpose? It's not whether or not the flooding after it occurred was for a public purpose. It's the affirmative action. That was the standard. Analogizing to Hathcock, that was the standard. But that would seem to capture any government action that harms anyone. I mean, generally, governments are always going to be trying to act for a public purpose. Yeah, I mean, your theory just, I just want to echo the point. Your theory is that every time governments do something for a public purpose, of course it's intentional, of course it's a public purpose. If what they're doing turns out negligently to cause harm, you always call that intent, because they acted intentionally for a public purpose. Well, that just blows up all of these rules. Right, and if that was just the standard, I believe that would also be true. Krieger went further to state that in that case, the point is I was asking a question that I think hurts your position, just to make sure you understand. Right, I'd like to elaborate. There's more than just showing that they intended a public purpose. There's also, in Krieger, they established that the plaintiffs need to exert more, which they did. They said that the state agencies knew of the risks, and they decided to go for it anyway. It's a degree of foreseeability. Not only do you need a public purpose, but the government has to know that what they're doing can cause risk, that it's a danger to the public. And here, because they knew of the spillway deficiencies, because once the FRC license was revoked, they knew that there is a gate that led to the powerhouse. What do you make of the ultimate analysis of what went wrong, and that it wasn't spillover defects? It was static liquefaction? Right, that's the leading theory, but the idea is that the static liquefaction was caused by the high lake levels. So the high lake levels were still a significant cause. But the counties knew that because the license was revoked, that the spillway is even more deficient, because less power is going through, they had to turn off the gates that was generating power. There was a gate that led to the powerhouse, and so the counties knew that it was already deficient. The second that license was revoked, the dam became more deficient, and the court wasn't aware of that. The counties knew that there was a risk in keeping those lake levels that the FRC had kept for many years, because the powerhouse was functioning then. Essentially, the dam got worse once the license was revoked. The counties knew that, and yet still chose to keep those lake levels. And I will, unless the court has any further questions, I will keep the remaining time for a vote. All right, thank you. Thank you. Mr. Curlew? Good morning to the panel, and may it please the court. Douglas Curlew on behalf of Gladwin County and Midland County. I wanted to make an initial note of something I had noticed for the first time. I don't know how I missed it earlier last evening as I was going over this. This is the lake level order, which is document 56-6 in the record. I hadn't noticed before, but the Department of Environmental Equality from the State of Michigan, and more importantly, the Michigan Department of Environment, Great Lakes, and Energy, which I will call EGLE from now on, were both parties to the lake level proceedings, and they both signed off on it through separate attorney generals. So it not only did the Federal Energy Regulatory Commission, the FERC, and the subsequent study, the Spicer Group study that was done afterwards, all say the lake level that the FERC has maintained, with full knowledge of the spillway problem, should be maintained. But the state regulatory agency itself also said, we will approve that lake level. It wasn't a new lake level. It was a status quo, what had been existing for a century. I mean, there was no, the expert for the plaintiffs himself says there was no reason for anyone to have expected static liquefaction. It's highlighted in my brief and quoted the extensive studies that were done that said this cause of what caused the damn burst was not. Why wouldn't high lake levels improve the, increase the odds of static liquefaction or whatever the right phrase is? That wasn't clear either. The pages of the IFT report, pages 66 and 67, where they do the discussion of that say, well, they didn't want to rule out the thought that that might have a role, but they didn't see that that was really the cause. They didn't pin that as the cause. And they said, honestly, we can't say how much lower you might've even brought the lake to solve that problem or prevent any impact. They suggested even run of the river level, which means no impoundment at all would have solved this problem because there was this inherent defect in the dam itself that all these studies by my brief never found it. The plaintiff's own experts said, you know, there was no reason for the counties to expect it based on the studies we've discussed. The static liquefaction was never even on the table for anybody spillways. The whole issue is that the dam would not be overtopped and it wasn't overtopped. The spillways did what they were supposed to do. So are you saying the government was not aware of the risk of harm here? Not at that particular risk. No. Static liquefaction was never on anybody's radar. There had been multiple studies. In fact, as I point out in the brief, there had actually been, according to the IFT report, the Boyce had undertaken and other previous owners that are taken to him, reinforce the embankments, even without any particular risk there, but they had done that just to maintain them. So the risk that actually happened was never on anybody's radar in this case, as far as can we make of, of Krieger. I mean, you, we get the point that it's a motion to dismiss, but you know, you still deal with matters of law at the motion to dismiss stage and, you know, Michigan court of appeals and all that. There's a state claim in this case. Well, of course the Krieger case is against the state agencies that regulated the dam. That's the, that's not who the party here is. The question is what control did back Gladwin and Midland County have now opposing counsel said that they had control, but no, he said it himself. They were negotiating the purchase of the dam. That was still in negotiation. The purchase agreement was drafted, but never went into effect. Let me try this angle from question from a slightly different angle. Would you say Michigan takings law versus condemnation law is different from federal takings law? And if so, you know, isn't the Michigan case Michigan law a little harder for your side? No, I would say it's actually, I would say Michigan actually has a stricter standard. So they talk, you have to have abused a stricter standard, which is why that's hard for you. In other words, it's easier to win if you're a plaintiff on a state takings. Oh, no, quite the contrary. I think it's harder for the plaintiffs to win. They have to prove an abuse of government power directly aimed at the specific property of the plaintiff. There's been an abuse of governmental power here. They did what the law allows them to allow and what the FERC and what the regulatory agencies for the state signed on to allowing this particular lake level to be there to the extent that the lake level was any issue at all. This was not an abuse of power because this was the status quo that the previous regulatory agencies and the current regulatory agency has said should be in effect and also which an independent report said should be in effect. And whether it was directly aimed at the property of the plaintiffs, it wasn't directly aimed at the property of the plaintiffs. It was aimed at the lake level upstream and maintaining the status quo of that situation. I would point out again that when it came push came to shove and that last winter of 2019, 2020 came on, Boyce said we want to lower the lake level eight full feet and the FLTF, although having no actual control over it said, well, we'll support you in that. In fact, they undertook knowing that there was going to be a squawk from the state government about those muscles in the lake. And I'm not an expert on freshwater mussels. They said we will try to do them and undertook a muscle recovery effort. But the state regulatory agency said, we're not going to allow you to lower the lake and we're going to sue you because you did. So they did do so for damaging the muscles. If there was any pressure to maintain the lake level, it wasn't coming from the counties. It wasn't coming from the FLTF. It was coming from the state agency. So no. And the county certainly had no control. The FLTF never got control. They could only do things to the extent that the Boise entities would allow them. It says in the plaintiff's complaint that the Boyce entities were the owners of the property that was decided in the Lee, the Lee Mueller case, which we also cite in our brief, where I believe there was a judgment just went against Lee Mueller on that because they were the owners of the dam. They were the ones in control of the dam. The counties were not. The counties never had control of the dam until seven months after the dam burst. When at that time, they then got the consent judgment by eminent domain to take it over. But they certainly never had control before that, which is why they certainly fail under Michigan law. You remember the Wiggins case, which is. Is there any part of your theory that says this is all responsibility of the power companies that owned, you know, own this for a while? Well, I don't worry. I'm not so concerned about what responsibility they have. They've already been hit by judgments. Frankly, the Boyce energy case was already decided against them and they've gone into bankruptcy. As I understand the current status of that situation. The question in my mind is only did the counties have control and they did not. Was that lawsuit over this collapse? Yes. Yeah. Yes. There was a, there was a theory there. What had the power companies done wrong? Led to that liability out of curiosity. I can't sort out the specific details of that one. I know the Krieger case, it has to do with the state exercising its control over the dam. I believe it's in the Boyce case. It's just the fact that they did have the control over the dam as the owning entity and the one who had maintained it. And so they were responsible in that for that reason. Negligence tort type theory. Yeah, it will have to be. They obviously can't be guilty of a taking because they're not a government entity. So yes, that was the, that was the tort. And so those cases have gone on and of course it was the state regulatory authorities that my point, then the actual private owner of the dams are the ones responsible. The counties never had the authority or the power to be responsible for a taking in this case. I would say, although I've already, I already actually addressed it. The lake level thing I believe is just a red herring because that really wasn't the cause. And I would, if we could move on just for a second to the federal case law again, a lot of these cases are particularly illustrative. The Baird case and the Hartwig case I think are particularly appropriate because in both those cases, it involved release of water that had supposedly been kept at too high a level behind the dam and then caused the release caused damage downstream. And in both cases, the determination of the court of claims was that was no taking. And so I think my brief really pretty much covers everything since there's no other questions. I don't need to take any more of the panel's time. All right. Thank you. Thank you.  Morning again, your honors. So I would like to address some of the points made by brother counsel. First regarding the lake level order. It is true. The state agencies did provide input on that. However, the state is not a part of this case. We are not asserting that the state is innocent in this case. In fact, when we originally filed this, the state was a defendant. They were dismissed. So the fact that the state was there, it doesn't somehow absolve four lakes for petitioning this lake level and maintaining it, despite knowing the risks of the deficient spillway capacity and the fact that the dam simply could not handle the water flow that was going through at the time. Did you appeal this dismissal of the state? No, we have a, there is a separate cause of action against the state in the court of claims. Um, were you involved in the actions against the power companies? No. Uh, regarding the, um, you mentioned the IFT report and the lake levels. Uh, the IFT report did conclude that the lake levels were a contributing factor to the dam collapse. And this is actually fairly obvious. They claimed that the static liquefaction defect has been in the dam essentially since it was constructed and yet it was never triggered. And the day of the dam collapse, the lakes had reached a record high level of three feet higher than it ever had in the history of the lake. So clearly the lake level was a contributing factor to static liquefaction. There was a lot of uncertainties in this case. I can understand your argument if the lake level that had been set was attributed to the causing the collapse of the dam, but here it wasn't the lake level. It was the lake level plus wasn't it three, three more feet of water that had come down in this torrential rain? Yes, it was. It did start at the normal lake level. Uh, plaintiffs have submitted expert testimony, which suggests that if the lake level had been drawn down eight feet, it would have established a significant amount of more time before that lake level could reach that, that, uh, high level that it reached and the dam would have had more time to pass flow water through. Uh, regarding the brother council's point. Just so you know, that just goes back to sounding like negligence to me. I can understand where it sounds like negligence. Uh, I would like to repoint out the, the point in Krieger was that the question is, did they, did they do it for a public purpose? And did they know the risks involved? That was the status. That was the legal standard set in Krieger because the state agencies knew the claim in that case. They also analog, analogized to the maze case, which was the Flint water crisis. And they said in that case, the government agencies knew the risk of switching the water source and they did it anyway. And the court concluded in a Michigan Supreme court case that that is a taking under Michigan state law. They said here, it's the same thing. We have a government agency committing a government action for a public purpose and they knew the risks involved to the public. They prioritized other things over that risks. And it resulted in the destruction of plaintiff's properties and damage. Just to put a finer point on that. It seems like all the focus was the adequacy of the spillway. Are you saying that the County defendants knew about this static liquefaction defect? No, they did not. So they didn't know. No. So if they didn't know, obviously they didn't hide it from the circuit court. No, but they, they did hide the fact. Are you saying they should have known? I'm saying that they knew of the dangers of this spillway capacity and that the fact that the dam simply couldn't handle the water flow. But the report seems to say, if I understand it correctly, that the liquefaction and the spillway are two distinctly, at least arguably, different things. It wasn't the spillway failure here that caused the dam to fail. No, it actually was. They're saying that because they conclude that it was a wide variety of people rose to the point that it did was because the spillway capacity couldn't handle the lake. If the spillway capacity was repaired, they said that was really what would have prevented this entirely. The only, because the spillway capacity wasn't repaired, the only short-term remedy would be to lower the lake levels until that spillway capacity could be repaired. That is the option that the state had. They knew they had that option. They knew the risks that were involved. And they prioritized other public concerns, such as the property of the lake and environmental concerns, over the safety risks. When you say they, are you talking about? Excuse me, the counties knew of the risks. They prioritized the public concerns over the safety concerns. I thought your fellow council said that they actually were in favor of lowering the lake level and the state regulators wouldn't let them. I'm glad you brought up that point. The reason why Boyce Hydro wanted to lower the lake level at the end of 19 was to provide winter repairs. Over the winter, there's ice buildup in the dam. He wanted to essentially take care of that ice and then once it was finished, there was no issue to raise the lakes. The county supported that, but it had nothing to do with drawing the lake level down to repair the spillway capacity. That's really what caused the lake over here and what caused the dam failure was that until the spillway capacity could be repaired, they should have drawn the lake level down. In fact, immediately after the dam broke, the FERC did exactly that. They ordered the rest of the dams to draw down their water until their spillway capacities could be fully repaired. That is what the state should have done here. All right, thanks very much. We appreciate your helpful briefs, both of you, and your arguments. Thank you for your time. This will be submitted.